UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UN4 PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MADISON PALMER, *et al.*, <br><br> Defendants. | Case No. C17-0785RSL <br><br> ORDER GRANTING IN PART UN4'S MOTIONS FOR DEFAULT JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on plaintiff UN4's motions for default judgment against defendants Theresa Kirwan (Dkt. #97), Nik Penchev (Dkt. #99), Francisco Ramirez (Dkt. #101), Lucy Kuria (Dkt. #103), Robert Morrison (Dkt. #105), Senghout Lim (Dkt. #107), Nouredin Alhegni (Dkt. #109), Catie Wentz (Dkt. #111), Griselda Gomez (Dkt. #113), Tara Salzer (Dkt. #115), and Curtis Casses (Dkt. #117). Having reviewed the relevant briefing and the remainder of the record, UN4's motions for default judgment are GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

The eleven motions for default judgment that are the subject of this Order are just a portion of the more than one hundred default judgment motions filed by plaintiff's counsel in twenty-six cases before the undersigned. All of the cases assert essentially the same causes of action based on remarkably similar allegations, although the motion picture at issue, the owner of the copyright, and the defendants vary. For purposes of these motions, UN4 alleges that 60 individual defendants unlawfully infringed its exclusive copyright to the motion picture *Boyka Undisputed 4*, which it developed and produced, by copying and distributing the film over the Internet through a peer-to-peer network using the BitTorrent protocol. Plaintiff served internet service providers ("ISP"s) with subpoenas in order to identify the alleged infringers. Amended complaints identifying defendants by name were subsequently filed.

Defendants Kirwan, Penchev, Ramirez, Kuria, Morrison, Lim, Alhegni, Wentz, Gomez, Salzer, and Casses (collectively "Defendants") are named in the same complaint because, given the unique identifier associated with a particular digital copy of *Boyka Undisputed 4* and the timeframe in which the internet protocol address associated with each Defendant accessed that digital copy, UN4 alleges the named Defendants were all part of the same "swarm" of users that reproduced, distributed, displayed, and/or performed the copyrighted work. According to UN4, Defendants directly or indirectly shared, downloaded, and distributed a single unique copy of *Boyka Undisputed 4* that had been seeded to the torrent network at some undefined point in the past.

Defendants did not respond to UN4's complaint. The Clerk of Court therefore entered default against Defendants at UN4's request. See Dkts. #81-91. UN4 now seeks judgment against each Defendant.

### III. DISCUSSION

Federal Rule of Civil Procedure 55(b) authorizes a court to grant default judgment. Prior to entering judgment in defendant's absence, the Court must determine whether the allegations of a plaintiff's complaint establish his or her liability. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The court must accept all well-pled allegations of the complaint as established fact, except allegations related to the amount of damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). Where the alleged facts establish a defendant's liability, the court has discretion, not an obligation, to enter default judgment. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). If plaintiff seeks an award of damages, it must provide the Court with evidence to establish the amount. TeleVideo Sys., 826 F.2d at 917-18.

    A. Liability Determination.

The allegations in UN4's complaint establish Defendants' liability for direct copyright infringement. To establish direct infringement, UN4 must demonstrate ownership of a valid copyright and that Defendants copied "constituent elements of the work that are original." L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Here, UN4 alleges it owns the exclusive copyright to the motion picture *Boyka Undisputed 4* and that Defendants participated in a "swarm" to unlawfully copy and/or

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 3

distribute the same unique copy of *Boyka Undisputed 4*. These allegations were established by entry of default against Defendants. Accordingly, UN4 has established Defendants' liability for direct copyright infringement.

B. <u>Default Judgment is Warranted</u>.

Having established liability, plaintiff must also show that default judgment is warranted. Courts often apply the factors listed in <u>Eitel</u>, 782 F.2d at 1471-72, to make this determination. Those factors are:

> "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

The majority of these factors weigh in favor of granting default judgment against Defendants. UN4 may be prejudiced without the entry of default judgment as it will be left without a legal remedy. See <u>Landstar Ranger, Inc. v. Parth Enters., Inc.</u>, 725 F. Supp.2d 916, 920 (C.D. Cal. 2010). UN4's complaint sufficiently alleges a claim of direct copyright infringement, and Defendants did not present any evidence or argument to the contrary. Additionally, the Court finds there is a low probability that default against Defendants was due to excusable neglect: Defendants were given ample opportunity to respond to the filings in this matter between the time they were served with UN4's complaint and the date of this Order. Finally, although there is a strong policy favoring decisions on the merits, the Court may consider Defendants' failure to respond to UN4's

requests for default and default judgment as admissions that the motions have merit. LCR 7(b)(2).

The Court acknowledges that a dispute concerning the material facts alleged by UN4, including the identity of the alleged infringers, could arise in this case. The Court also acknowledges that the amount at stake may be significant depending on the means of each Defendant. UN4 seeks enhanced statutory damages in the amount of at least $1,500 along with attorneys' fees in excess of $1,430 and costs in excess of $95 from each individual Defendant. Notwithstanding these considerations, the Eitel factors weigh in favor of granting default judgment against Defendants.

C. Appropriate Relief.

UN4 requests entry of a default judgment against each Defendant providing the following three categories of relief: (1) permanent injunctive relief; (2) statutory damages; and (3) attorney's fees and costs. Each category is discussed below.

   i. *Permanent Injunctive Relief*

Permanent injunctive relief is appropriate. Section 502(a) of Title 17 of the United States Code allows courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." As part of a default judgment, courts may also order the destruction of all copies of a work made or used in violation of a copyright owner's exclusive rights. 17 U.S.C. § 503(b). Given the nature of the BitTorrent protocol and Defendants' participation therein, the Court finds Defendants possess the means to continue infringing in the future. MAI Sys. Corp. v. Peak Comput., Inc., 991 F.2d 511, 520 (9th Cir. 1993) (granting permanent

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 5

injunction where "liability has been established and there is a threat of continuing violations."). Consequently, the Court will issue a permanent injunction enjoining Defendants from infringing UN4's rights in *Boyka Undisputed 4* and directing them to destroy all unauthorized copies of *Boyka Undisputed 4*.

        ii.    *Statutory Damages*

Plaintiff requests an award of statutory damages in the amount of at least $1,500 against each Defendant for his or her participation in the BitTorrent swarm that resulted in the unauthorized download and/or distribution of the seed file containing *Boyka Undisputed 4*. Although the actual economic damages associated with a lost video rental are likely minimal, plaintiff correctly points out that Congress has authorized statutory damages in significant amounts to compensate for difficult-to-prove downstream losses and to deter future infringement. Los Angeles News Serv. v. Reuters Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998) (quoting Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990)). Under 17 U.S.C. § 504(c)(1), the Court may award statutory damages "for all infringements involved in the action, with respect to any one work, . . . for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." The Court has wide discretion when determining the amount of statutory damages and takes into consideration the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether "the recovery sought is proportional to the harm caused by defendant's conduct." Curtis v.

Illumination Arts, Inc., 33 F. Supp.3d 1200, 1212 (W.D. Wash. 2014) (citing Landstar, 725 F. Supp. 2d at 921).

Copyright violations come in all shapes and sizes, from the unauthorized copying of a Halloween word puzzle for a child's party to the unauthorized manufacture and sale of millions of bootleg copies of a new release. While Defendants' alleged copyright violation is of concern in that it represents a theft of intellectual property, it is a relatively minor infraction causing relatively minor injury. UN4 has not shown that any of the Defendants is responsible for the "seed" file that made UN4's copyrighted work available on the BitTorrent network, nor has UN4 presented evidence that Defendants profited from the infringement in any way. Given the range of statutory damages specified in the Copyright Act, the Court finds that an award of $750 for the swarm-related infringements involved in this action is appropriate. Each of the Defendants is jointly and severally liable for this amount.

This award is in line with the awards made by other courts in the Ninth Circuit and appears adequate to deter Defendants from infringing on plaintiff's copyright in the future.[1] Plaintiff argues that a significantly higher award is necessary to force people like Defendants to appear and participate in these BitTorrent cases. Plaintiff apparently wants the Court to raise the statutory damage award to an amount that is at or above the

---

[1] UN4 has presented no evidence that Defendants will not be dissuaded from infringing in the future. The judgment entered in this case, including statutory damages, attorney's fees, and costs, may be recovered by garnishing Defendants' wages and/or seizing and selling their non-exempt property. This is a steep penalty for having been too lazy to go to the local Redbox or too cheap to pay a few dollars for an authorized download. Plaintiff offers no evidence to support its contention that personal liability for a judgment in excess of $500 is of no consequence to the judgment debtor.

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 7

anticipated costs of defending this action. A defendant may, however, decide that conceding liability through default is the best course of action given the nature of the claims and the available defenses. The "punishment" for that choice is the entry of default judgment and an award of damages under the governing standards. As discussed above, those standards lead to the conclusion that the minimum statutory penalty should apply in this case. Plaintiff offers no support for the proposition that participation in federal litigation should be compelled by imposing draconian penalties that are out of proportion to the harm caused by Defendants' actions or any benefits derived therefrom. Statutory damages are not intended to serve as a windfall to plaintiffs and will not be used to provide such a windfall here.

The Court will award UN4 $750 in statutory damages for the infringements involved in this action, for which defendants are jointly and severally liable.

        iii.    *Attorneys' Fees and Costs*

Finally, UN4 asks the Court to award between $1,437.50 and $1,796.00 in attorneys' fees and between $97.00 and $142.00 in costs against each Defendant in this matter. Pursuant to 17 U.S.C. § 505, the Court "in its discretion may allow the recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."

The Court agrees that UN4 should be awarded attorneys' fees. Courts consider several factors, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence," when making attorneys' fee

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 8

determinations under the Copyright Act. Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing Jackson v. Axton, 25 F.3d 884, 890 (9th Cir. 1994)). Because UN4 has succeeded on its non-frivolous direct infringement claim[2] and because an award would advance considerations of compensation and deterrence, UN4 is entitled to attorneys' fees.

However, despite counsel's efforts to allocate the fees and costs to each individual defendant, the overall fee request is problematic. Courts determine the amount of a fee award by determining a "lodestar figure," which is obtained by multiplying the number of hours reasonably expended on a matter by a reasonable hourly rate. Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir. 1993). Courts may then adjust the lodestar with reference to factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), to the extent those factors are not already subsumed in counsel's hourly rates or the number of hours expended on the litigation. The relevant Kerr factors here are: (1) the time and labor required; (2) the novelty and difficulty of the questions; and (3) the skill requisite to perform the legal services properly.

1. *Reasonableness of Rate Requested*

In the Ninth Circuit, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). Instead, the reasonable hourly rate is

---

[2] Despite the entry of default, the Court specifically declines to enter judgment in plaintiff's favor on its indirect and contributory infringement claims.

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 9

determined with reference to the prevailing rates charged by attorneys of comparable skill and experience in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). Courts may also consider "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney" as "satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Identifying counsel's hourly rate is more challenging than it should be. His hourly rate for "normal" intellectual property cases is now $545/hour, but he has agreed to a reduced rate of $350/hour in this case. Dkt. #98 at ¶7. In a similar BitTorrent matter involving another copyright holder, counsel stated that his reduced rate was $450/hour (LHF Prods., Inc. v. Acosta, C16-1175RSM, Dkt. #71 at ¶7), which is the rate he posits is "reasonable and warranted in the Seattle area" in this case (Dkt. #98 at ¶9). The Court assumes, based on the fee calculation charts set forth in counsel's declarations, that he seeks an hourly rate of $350 in this case. This hourly rate is generally within the norm for BitTorrent cases in this district and is a reasonable rate for the type of formulaic legal work performed in these matters.

2. *Reasonableness of Hours Requested*

Turning to the reasonableness of the hours requested, plaintiff has the burden of documenting the hours expended on this matter and establishing their reasonableness. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Court will exclude hours that are

"excessive, redundant, or otherwise unnecessary" and therefore not reasonably expended. Id. at 434. Counsel has attempted to calculate the hours spent in connection with UN4's claims against each individual Defendant by dividing the total number of hours spent on collective efforts by the total number of defendants at the time the action was taken. Time spent working solely in pursuit of claims against an individual are allocated wholly to that individual. Dkt. #98 at ¶10. Taking Kirwan as an example, counsel seeks compensation for the following activities:

| Activity | Attorney Time | Legal Assistant Time |
|---|---|---|
| Review evidence of BitTorrent activity giving rise to potential claims | .4 hours | |
| Prepare complaint and supporting exhibits | .4 hours | |
| Prepare and file motion to expedite discovery | .4 hours | |
| Communicate with client | .1 hours | |
| Review Court orders | .2 hours | |
| Prepare subpoena and letter to ISPs | .1 hours | .3 hours |
| Review ISP response and prepare communications with Defendant | .2 hours | .2 hours |
| Review Defendant's "status and history" | .3 hours | |
| Prepare amended complaint and review | .6 hours | |
| Prepare, review, and file waivers and/or summons | .1 hours | .3 hours |
| Review file | ≈ .1 hours | |
| Prepare and file motion for default | ≈ .2 hours | |
| Prepare and file motion for default judgment | 1 hour | |
| | | |
| Total: | 4.1 hours | .8 hours |

These seemingly modest time expenditures mask the reality of counsel's fee request.

Until recently, the BitTorrent cases filed in this district all proceeded in a similar

manner.³ The original complaints list Doe defendants, identified only by IP addresses, and allege infringement of the client's exclusive rights in a specified motion picture. Groups of Doe defendants are named in the same complaint because they allegedly infringed the same digital copy of the copyrighted material by participating in the same BitTorrent "swarm." The nearly identical complaints are accompanied by nearly identical motions for expedited discovery. Once the Court grants leave to conduct expedited discovery, subpoenas are served on the ISP associated with the addresses identified in the log attached to the complaint as Exhibit B. Once in possession of the Doe defendants' identities, counsel attempts to obtain a settlement of the claims and files amended complaints against any non-settling defendants. Service, additional settlements, and defaults/default judgments follow, with the exception of a handful of defendants who are actively litigating the cases in this district. On occasion, counsel seeks an extension of time in which to serve.

Almost every filing in this cause of action was essentially copied from scores of other cases filed by the same counsel.⁴ There is nothing wrong with utilizing form documents to pursue identical infringement claims arising from identical activities. As has been previously noted, however, it is wrong for UN4's counsel to file identical complaints and motions with the Court and then expect the Court to believe that he

---

³ The Honorable Thomas S. Zilly has required certain additional disclosures or proffers in BitTorrent cases pending before him. See Venice PI, LLC v. O'Leary, C17-0988TSZ, Dkt. # 32.

⁴ The exceptions in this case including the filing of a Second Amended Complaint, a motion for leave to permit alternative service and an extension of time, and discovery motions related to defendant Mortedha Al-Sultan.

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 12

labored over each filing. LHF Prods., C16-1175RSM, Dkt. #73 at 12. To arrive at his per Defendant fee request, counsel divided time entries related to specific activities by the number of defendants then in the case. When the relatively small time allotments set forth in counsel's declaration related to Kirwan are multiplied by the number of defendants, counsel is seeking compensation for an excessive number of hours. Counsel apparently spent 9.2 hours studying the log of infringing transactions and IP addresses that gave rise to this particular lawsuit.[5] He spent another 9.2 hours generating a complaint that is virtually identical to the complaints UN4 filed in other cases (not to mention the scores of BitTorrent cases filed on behalf of other clients). Altering the form complaint to initiate a new lawsuit is, at this point, a word processing chore: the preparer checks to make sure the correct plaintiff and film are identified, changes the number of Doe defendants in the caption, inserts the correct IP addresses in the section of the complaint describing the defendants, and attaches the investigator's log regarding the relevant swarm as Exhibit B. Charging 9.2 hours of attorney time for this task is unreasonable. Counsel seeks to recover fees for another 12.6 hours spent preparing an amended complaint that was identical to the original except for the caption and the correlation of the IP addresses with the subscribers' names.

      A form pleading and motions practice such as this simply does not take the type of expertise or time that is normally associated with intellectual property matters. Nor does it justify the number of cumulative hours that counsel seeks here. Having reviewed

---

[5] This case was originally filed against twenty-three Doe defendants.

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 13

the billing records and dockets in this and other similar matters, the Court finds that the bulk of the "legal" work in these cases was performed and compensated years ago, that these actions now involve far more word processing than drafting or legal analysis, and that the attorney time necessary to tailor documents to each case and/or individual is minimal. The Court will award 1 hour, at an hourly rate of $350, to compensate UN4 for counsel's time spent pursuing its claims against each named Defendant, and .8 hours, at an hourly rate of $145.00, to compensate UN4 for legal assistant time altering pleadings, motions, and service documents. The Court is satisfied that an attorneys' fee of $466.00 per Defendant is reasonable and sufficient to cover the form-pleading work required by this case.

3. *Costs*

UN4 requests between $97.00 and $142.00 in costs from each Defendant. Recovery of a pro rata portion of the filing fee and the individual costs associated with the third-party subpoena and service is appropriate.

## IV. CONCLUSION

The Court, having reviewed the motions for default judgment and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

1. UN4's motions for default judgment are GRANTED IN PART and DENIED IN PART.

2. Defendants Kirwan, Penchev, Ramirez, Kuria, Morrison, Lim, Alhegni, Wentz, Gomez, Salzer, and Casses are hereby permanently enjoined infringing UN4's exclusive rights in the motion picture film *Boyka*

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 14

*Undisputed 4*, including without limitation by using the Internet to reproduce or copy *Boyka Undisputed 4*, to distribute *Boyka Undisputed 4*, or to make *Boyka Undisputed 4* available for distribution to the public, except pursuant to lawful written license or with the express authority of UN4;

3. To the extent any unauthorized reproduction or copy of *Boyka Undisputed 4* is in Defendants' possession or subject to their control, they are directed to destroy it;

4. Defendants are jointly and severally liable for statutory damages in the amount of $750;

5. Defendant Theresa Kirwan is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

6. Defendant Nik Penchev is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

7. Defendant Francisco Ramirez is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

8. Defendant Lucy Kuria is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

9. Defendant Robert Morrison is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

10. Defendant Senghout Lim is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $97.00.

11. Defendant Nouredin Alhegni is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

12. Defendant Catie Wentz is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

13. Defendant Griselda Gomez is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

14. Defendant Tara Salzer is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

15. Defendant Curtis Casses is individually liable for attorneys' fees in the amount of $466.00 and costs in the amount of $142.00.

Dated this 14th day of March, 2019.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART MOTIONS
FOR DEFAULT JUDGMENT - 16